UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

WANDA M. RUFFIN,
Individually and on behalf
of the late Lawrence N. Ruffin,

   Plaintiffs,

    v.            Case No. 04-C-0976

MILWAUKEE METAL PRODUCTS,
EMJAY CORPORATION,
WELLS FARGO,
UNITED WISCONSIN GROUP,
BETTY JANE PARROTT,
WARREN PODOLSKE,
MARY SUE BRAUN,
EMIL PFENNINGER,
LEICHTY THOMAS,

   Defendants.

ORDER GRANTING DEFENDANT UNITED WISCONSIN GROUP'S MOTION
TO STRIKE PLEADINGS (DOC. #104), GRANTING DEFENDANT UNITED
WISCONSIN GROUP'S MOTION FOR SUMMARY JUDGMENT (DOC. # 86),
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT FOR UWG UNITED
WISCONSIN INSURANCE COMPANY [SIC] (DOC. # 108) AS MOOT, AND
DENYING DEFENDANTS' MOTION TO DIRECT ENTRY OF JUDGMENT
IN FAVOR OF MILWAUKEE METAL PRODUCTS, BETTY JANE PARROTT AND
WARREN PODOLSKE PURSUANT TO RULE 54(b) (DOC. # 81) AS MOOT

   Plaintiff, Wanda M. Ruffin, instituted this case on November 7, 2004, alleging that her late husband was denied disability and retirement benefits wrongfully and that she, as beneficiary, is entitled to damages. She filed an amended complaint on March 30, 2005. Defendants Milwaukee Metal Products, Betty Jane Parrott and Warren Podolske have been granted summary judgment and were dismissed from the case on March 13, 2006. Therefore, United Wisconsin Group (UWG) is the only remaining defendant.

Multiple motions are now pending before this court. Defendants Milwaukee Metal Products, Betty Jane Parrott and Warren Podolske filed a motion for entry of final judgment pursuant to Fed. R. Civ. P. 54(b) on March 17, 2006; and UWG filed its second motion for summary judgment on March 23, 2006. On April 21, 2006, this court granted plaintiff an extension of time in which to file her response to the summary judgment motion. Plaintiff filed an affidavit in response to the summary judgment motion on May 2, 2006, and UWG filed its reply brief on May 5, 2006. An additional document was filed by plaintiff on May 26, 2006. Construing that document as a surreply, defendant filed a motion to strike on May 31, 2006. Finally, plaintiff filed a motion to amend her complaint on June 13, 2006. Thus, for the reasons stated below, UWG's motions for summary judgment and to strike pleading will be granted; Milwaukee Metal Products, Betty Jane Parrott and Warren Podolske's 54(b) motion will be denied as moot, as well as plaintiff's motion to amend.

## I. MOTION TO STRIKE PLEADINGS

As stated above, plaintiff filed a document entitled "Response to United Wisconsin Group and United Wisconsin Insurancce [sic]" on May 26, 2006. At the time, briefing for defendant's second motion for summary judgment was complete and plaintiff had not asked the court for permission to file a surreply.

On pages 6 and 7 of this document, plaintiff attempts to rebut the arguments made by defendant in its reply brief. She provides a list of reasons why she disagrees with UWG's contention that her responsive affidavit: 1) did not contain admissible evidence, 2) was not based on personal knowledge and 3) fails to identify issues of genuine disputed material facts. Furthermore, the document appears to bring up new arguments not addressed in plaintiff's affidavit in response to defendant's motion for summary judgment

2

or in defendant's reply brief. Such arguments include information regarding a profit sharing plan & trust, a pension benefit plan, disability payments and a worker's compensation claim.

In defendant's motion to strike the pleading, the defendant contends that this document was filed without prior authorization from this court. Furthermore, the defendant argues that not striking this document would unduly prejudice the defendant because it would incur additional cost to respond to it and it would delay this court's decision on motions now pending.

Civil Local Rule 7.1(c) sets forth the time frame within which parties must file their response and reply briefs. It states that response briefs written in opposition to motions for summary judgment must be filed "within 30 days of service of the motion" and reply briefs must be filed "within 15 days of service of the response brief." *Id.* Civil Local Rule 7.1(f) sets forth the page limits for these briefs, but also states that "[a] reply brief must be limited to matters in reply" to the response brief. Finally, Civil Local Rule 56.2 sets forth the summary judgment motion procedures. It does not allow for the filing of documents beyond the response and reply briefs, which includes the surreply brief filed by plaintiff in this case. *See* Civil Local Rule 56.2(b), (c) and (d).

Plaintiff did not request permission for, nor did this court authorize, the filing of a surreply brief. Defendant is correct that permitting this filing would require it to incur extra costs to respond. Furthermore, this court finds that the plaintiff's submission includes arguments which are new and not made in response to defendant's reply brief in contradiction to Civil Local Rule 7.1(f). For these reasons, the May 26, 2006, document entitled "Response to United Wisconsin Group and United Wisconsin Insurancce [sic]" is

3

stricken. Consequently, this court will not consider it when deciding defendant's motion for summary judgment.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of her cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an

4

element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in her favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989) (citations omitted).

Civil Local Rule 56.2(e) states that "[i]n deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Plaintiff received a copy of this rule attached to defendant's motion for summary judgment as is required by Civil Local Rule 56.1.[1] Therefore, plaintiff was warned adequately as to the effect of a failure to respond to defendant's proposed findings of fact.

---

[1] Defendant included the text of Fed. R. Civ. P. 56(e) and (f), Civil Local Rules 56.1, 56.2 and 7.1 as required by Civil Local Rule 56.1.

5

Even with this warning, plaintiff did not file a separate response to defendant's proposed findings of fact with her affidavit on May 2, 2006. This failure, by itself, is not fatal to plaintiff's opposition to the summary judgment motion. A plaintiff can rebut a defendant's contention that there are no genuine issues of material fact by demonstrating their existence in a responsive affidavit. *See Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). Indeed, the Seventh Circuit has avised that "[w]e have routinely found that a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion." *Id.* Fed. R. Civ. P. 56(e) gives specific limitations as to what this affidavit must contain and states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.*

However, because she is proceeding in this action pro se, plaintiff was given a copy of Rule 56(e) to aid her response to defendant's motion for summary judgment. Unfortunately plaintiff's responsive affidavit suffers from multiple problems and does not comply with this rule. First, the bulk of the information in the affidavit is irrelevant and redundant. Second, much of the information in the affidavit is not based on plaintiff's personal knowledge. Third, the responsive affidavit includes various hearsay statements which are not subject to any exceptions stated in the Federal Rules of Evidence which would warrant their consideration.

Finally, the court will consider the supporting documents attached to defendant's affidavits as admissible evidence. Any argument to the contrary is foreclosed by plaintiff's failure to object to the admission in her response. *See Lac du Flambeau Band*

6

*of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin Inc.*, 991 F.2d 1249, 1259 (7th Cir. 1993).

B. Undisputed Facts

Plaintiff, Wanda Ruffin, is the wife of Lawrence Ruffin. (Doc. # 10, Am. Compl. at 3). She resides at 839 W. Somers # 548 Milwaukee, Wisconsin 53205. (Doc. # 10, Am. Compl. at 2). United Wisconsin Group (UWG) has its principal office in New Berlin, WI. (Doc. # 10, Summons at 1; Nash Aff. ¶ 7).

Milwaukee Metal Products (MMP) provided group life insurance coverage to its participating employees under a policy that was administered by UWG (the Life Plan). (Oakes Aff. ¶ 2, Ex. A). As a participating employee of the Life Plan, Lawrence Ruffin was covered under the Life Plan from July 1, 1991, until April 1, 1999. (Oakes Aff. ¶ 6, Ex. C; Burmeister Aff. ¶¶ 3, 8, Exs. B-E) . Lawrence Ruffin retired on March 8, 1999. (Burmeister Aff. ¶ 4, Ex. F; Nash Aff. Exs. A-45, A-46, B, C-1). His life insurance coverage was terminated subsequently under the Life Plan, effective April 1, 1999. (Oakes Aff. ¶ 6, Ex. C; Burmeister Aff. ¶¶ 3, 8, Exs. B-D).

Lawrence Ruffin was born on March 8, 1934; consequently, he was 65 years old when he retired. (Burmeister Aff. ¶¶ 5-6, Exs. A-E). The normal age of retirement is 65 years old. (Burmeister Aff. ¶ 6). MMP never requested a deviation from the normal retirement age. (Burmeister Aff. ¶ 7, Ex. G). The Life Plan did not provide coverage for retirees. (Oakes Aff. Ex. A-35; Burmeister Aff. Ex. G-35; Nash Aff. Ex. A-27).

MMP cancelled its entire group coverage under the Life Plan on January 31, 2000. (Burmeister Aff. ¶ 11, Ex. H; Nash Aff. Ex. C-1). Lawrence Ruffin died on December

7

22, 2000. (Burmeister Aff. ¶ 12; Nash Aff. Exs. A-45, D, E-2). The Life Plan contains the following provisions:

> TERMINATION OF INDIVIDUAL COVERAGE
>
> The coverage of any Insured will terminate upon the first to occur of any of the following dates:
>
>> 1. the date the policy is cancelled; or
>>
>> . . . .
>> 5. the date the Insured is no longer a member of the class of persons eligible for coverage as specified in this policy; or
>>
>> 6. the time the Insured is laid off, resigns, retires (except for Insured covered under a retiree class), or is dismissed from employment; or
>>
>> . . . .

(Oakes Aff. Exs. A-8-A-9; Burmeister Aff. Exs. G-8-G-9; Nash Aff. Exs. A-11-A12).

> CONVERSION
>
> The Group is responsible to notify the Insured of his eligibility to convert his Life insurance. The Insured may convert all or part of the insurance under this coverage without evidence of insurability to an individual life policy:
>
>> 1. if insurance ends because:
>>
>>> a. the Insured ceases to be Actively At Work Full Time or ceases to be in a class eligible for insurance; or
>>>
>>> . . .
>>>
>>> c. the Insured ceases to be eligible as described under the Special Provisions For Not Being In Active Status section or the Termination Of Extended Life Insurance

8

> section, provided that the Insured does not again become insured under this group policy for at least 31 days; and
>
> 2. If within 31 days after termination the Insured gives Us a written request to convert and pays the first premium on the new policy.

(Oakes Aff. Ex. A-17; Burmeister Aff. Ex. G-17; Nash Aff. A-20).

"Group" is generally defined by the Life Plan as being the insureds' employer. (Oakes Aff. Ex A-3; Burmeister Aff. Ex. G-3; Nash Aff. Ex. A-6). During the time the Life Plan was in effect, it was UWG's practice and custom to provide individual certificates of insurance to contracting employer groups like MMP for distribution to its employees participating in the Life Plan. (Oakes Aff. ¶ 5). Such Certificates contained the following provision:

> CONVERSION
>
> The Group is responsible to notify You of Your eligibility to convert Your Life insurance. You may convert all or part of the insurance under this coverage without evidence of insurability to an individual life policy:
>
> > 1. if insurance ends because:
> >
> > > a. You cease to be Actively At Work Full Time or cease to be in a class eligible for insurance; or
> > > . . .
> > > c. You cease to be eligible as described under the Special Provisions For Not Being In Active Status section or the Termination Of Extended Life Insurance section. You must not again become insured under the group

9

> > policy for at least 31 days; and
>
> > 2. If within 31 days after termination You give Us a written request to convert and pay the first premium on the new policy.

(Oakes Aff. Ex. B-5; Nash Aff. A-41).

UWG never received a request from Lawrence Ruffin to convert his group life insurance coverage to individual coverage. (Oakes Aff. ¶ 7). Moreover, UWG never received premiums to pay for individual life insurance coverage for Lawrence Ruffin. (Oakes Aff. ¶ 7). On December 22, 2000, the date of his death, Lawrence Ruffin was not covered under the Life Plan or any individual life insurance policy administered by UWG. (Burmeister Aff. ¶ 12).

Under the Life Plan, certain employees may have qualified for extended life insurance coverage. (Oakes Aff. Exs. A-15-A-17; Burmeister Aff. Exs. G-15-G-17; Nash Aff. Ex. A-18-A-20). However, extended life insurance coverage also terminates upon an insured's retirement, assuming he or she retires at a normal age and the group does not provide coverage for its retirees. (Oakes Aff. Ex. A-17; Burmeister Aff. Ex. G-17; Nash Aff. Ex. A-20). The Life Plan includes the following provision:

> TERMINATION OF EXTENDED LIFE INSURANCE
>
> Extended life insurance will terminate upon the first to occur of any of the following dates:
>
> . . .
>
> 4. the date the Insured retires at the normal age according to the Group's requirements, unless retiree coverage is provided.
>
> . . .

10

> We are not liable for a death claim under this coverage, unless
> We receive Proof of the Insured's death within 12 months after
> the date of death.

(Oakes Aff. Exs. A-16-A-17; Burmeister Aff. Exs. G-16-G-17; Nash Aff. Exs. A-19-A-20). UWG did not receive proof of Lawrence Ruffin's death within 12 months after his date of death (i.e., prior to December 22, 2001). (Burmeister Aff. ¶ 13).

The Life Plan provided its insureds with the option of choosing a Living Benefit. (Oakes Aff. Ex. A-37; Burmeister Aff. Ex. G-37; Nash Aff. Ex. A-32). UWG never received a written election or request for the Living Benefit from or on behalf of Lawrence Ruffin during the time he was insured under the Life Plan. (Burmeister Aff. ¶ 9). UWG has no knowledge whether Lawrence Ruffin would have even qualified for the Living Benefit on the date of his retirement. (Burmeister Aff. ¶ 10). Also, UWG has no knowledge whether Lawrence Ruffin had a medical prognosis of 12 months or less to live on the date he retired. (Burmeister Aff. ¶ 10). In addition, UWG does not know whether Lawrence Ruffin could have provided UWG a Physician's written certification regarding his medical prognosis as of the date he retired. (Burmeister Aff. ¶ 10).

C. Discussion

The amended complaint asserts that "(UWG) insurance co [sic] nor his employer did not notify [sic] him of his conversion rights, before they terminated his policy." Am. Compl. at 4.

UWG filed the pending motion for summary judgment arguing that it had no obligation to inform Lawrence Ruffin of his conversion rights under the group insurance policy. To survive UWG's summary judgment motion, plaintiff must prove that there are genuine issues of material fact regarding UWG's notification obligation. However, because

11

plaintiff has failed to provide a response to defendant's proposed findings of fact, the court concludes in accordance with Civil Local Rule 56.2(e) that there is no genuine issue of material fact as to the language of the group insurance policy and the individual certificates of insurance issued to MMP and MMP employees.

In Wisconsin, "[t]o state a claim for breach of contract [a] plaintiff must allege (1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach." *Uebelacker v. Paula Allen Holdings, Inc.*, __ F.Supp.2d __, 2006 WL 3167885, *6 (W.D. Wis. 2006)(citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 296 (Wis. 1971); *see also Brew City Redevelopment Group, LLC v. The Ferchill Group*, 2006 WI App. 39, ¶ 9, 289 Wis.2d 795, ¶ 11 (Wis. Ct. App. 2006). To prove a breach of contract claim in the instant case, plaintiff would have to show that UWG had a duty to notify the decedent of his right to convert his group insurance policy to an individual insurance policy.

According to the plain, unambiguous language of the policy, the duty to notify employees of their right to convert their group coverage to individual coverage was on the "Group." *See* Oakes Aff. Ex. A-17; Burmeister Aff. Ex. G-17; Nash Aff. A-20. The definition section of the policy defines "Group" as the employer; in this case the employer was MMP, not UWG. *See* Oakes Aff. Ex A-3; Burmeister Aff. Ex. G-3; Nash Aff. Ex. A-6. Any obligation regarding notification of conversion rights fell squarely, and solely, on the shoulders of the decedent's employer, MMP. *Id.*

Even looking at the facts in the light most favorable to the nonmoving party, plaintiff cannot prove the essential elements of her breach of contract claim against UWG. The group insurance policy did not place an obligation on UWG to notify the decedent of

12

his conversion rights. Thus, it is impossible for plaintiff to prove that UWG breached an obligation it never had or that damages to the plaintiff flowed from a breach. Therefore, as a matter of law, plaintiff's claim for breach of contract against UWG must fail and UWG's motion for summary judgment must be granted.

### III. MOTION TO AMEND COMPLAINT

Plaintiff filed a motion to amend her complaint on June 13, 2006. In this motion, she contends that the amendment is for good cause, but fails to point to any reason why this information could not have been included in the previously allowed amendment. Defendant argues correctly that the amendment would be prejudicial because it would have to incur additional costs to defend against these new claims and that it names parties who are no longer involved in this litigation. However, this discussion is academic because the motion to amend is moot in light of this court's decision regarding UWG's motion for summary judgment.

### IV. MOTION TO DIRECT ENTRY OF JUDGMENT

On March 17, 2006, defendants Milwaukee Metal Products, Betty Jane Parrott, and Warren Podolske asked this court to enter final judgment in their favor pursuant to Fed. R. Civ. P. 54(b). Plaintiff neglected to respond to this motion and her deadline for doing so has long since passed. Because the grant of summary judgment in favor of the final defendant, UWG, brings this case to a close, it is unnecessary to enter a separate judgment in favor of Milwaukee Metal Products, Betty Jane Parrott and Warren Podolske pursuant to Fed. R. Civ. P. 54(b). Hence, the motion to direct entry of judgment pursuant to Rule 54(b) is denied as moot. Now, therefore,

13

IT IS ORDERED that defendant UWG's motion to strike pleadings filed by plaintiff on May 26, 2006, is GRANTED.

IT IS FURTHER ORDERED that UWG's second motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to amend complaint is DENIED as moot.

IT IS FURTHER ORDERED that the motion to direct entry of judgment in favor of Milwaukee Metal Products, Betty Jane Parrott and Warren Podolske pursuant to Fed. R. Civ. P. 54(b) is DENIED as moot.

IT IS FURTHER ORDERED that this case is DISMISSED.

Dated at Milwaukee, Wisconsin, this 18th day of January, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE